IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 12, 2001

## STATE OF TENNESSEE v. CHARLES DAVID VANDERFORD

**Direct Appeal from the Circuit Court for Hardin County**
**No. 7329    C. Creed McGinley, Judge**

---

**No. W2000-02639-CCA-R3-CD - Filed December 14, 2001**

---

The appellant, Charles David Vanderford, appeals the order of the Circuit Court of Hardin County revoking the community corrections sentences that he received following his convictions by a jury of two counts of possession of a controlled substance with intent to sell. The appellant challenges the trial court's reliance upon his commission of crimes during the pendency of his appeal from his convictions of felony drug possession and prior to the commencement of his community corrections sentences. Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY, J., and CORNELIA CLARK, SP. J., joined.

Chadwick G. Hunt, Savannah, Tennessee, and J. Daniel Freemon, Lawrenceburg, Tennessee, for the appellant, Charles David Vanderford.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On February 6, 1996, the appellant was convicted by a jury in the Hardin County Circuit Court of one count of possession of one-half gram or more of cocaine with intent to sell, a class B felony, and one count of possession of one-half ounce or more of marijuana with intent to sell, a class E felony. The trial court imposed concurrent sentences of nine years incarceration in the Tennessee Department of Correction and eighteen months incarceration in the Department respectively. The trial court further ordered the appellant to serve one year of his sentences in the Hardin County Jail and the remainder in the local community corrections program.

Subsequently, the appellant appealed his convictions of felony drug possession and was released on bond pending the resolution of the appellate proceedings. On December 11, 1997, this court denied the appellant relief from his convictions, and the appellant submitted an application for permission to appeal to our supreme court. The appellant remained on bond and, on July 17, 1998, committed the additional offenses of fraud and criminal impersonation in McNairy County, for which offenses he was arrested and charged. Our supreme court denied the appellant's application for permission to appeal his convictions of felony drug possession on October 12, 1998, and the clerk of this court issued the mandate on October 29, 1998, returning the case to the trial court.

Accordingly, on November 18, 1998, the appellant reported to the Hardin County Jail, where he served his one-year term of confinement for the felony drug possession convictions. Immediately thereafter, he was placed in the local community corrections program. As a condition of his participation in the community corrections program, the appellant signed a behavioral agreement that, in relevant part, required his compliance with the laws of the United States, any state in which he might reside, and any municipality.

On June 29, 2000, the appellant was convicted in the McNairy County Criminal Court of his July 17, 1998 offenses of fraud and criminal impersonation. On July 20, 2000, Paul Moore, the appellant's community corrections officer, filed a behavioral violation report on the basis of the appellant's convictions. Consequently, the trial court issued a community corrections violation warrant ordering the appellant's arrest and, on October 17, 2000, conducted a hearing to determine whether the appellant's community corrections sentences should be revoked.

At the revocation hearing, the State presented the testimony of Moore. Moore related to the trial court that he first learned of the appellant's offenses of fraud and criminal impersonation while the appellant was serving his one-year term of confinement in the Hardin County Jail. Moore submitted for the court's consideration copies of the judgments of conviction in the fraud and criminal impersonation cases. Moore conceded that the appellant had not otherwise violated his community corrections sentences. Indeed, Moore noted that the appellant "is probably one of the best offenders I've got, as far as him being on Community Corrections."

At the conclusion of the hearing, the trial court determined that the appellant had violated a condition of his community corrections sentences, revoked the sentences, and ordered the appellant's confinement in the Department. The appellant now appeals the trial court's order.

## II. Analysis
Initially, we note that the principles governing a probation revocation are largely applicable to the revocation of a community corrections sentence. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991); see also State v. Michael Fields, No. M2000-01657-CCA-R3-CD, 2001 WL 1218593, at *2 (Tenn. Crim. App. at Nashville, October 12, 2001); State v. Janie Cousett, No. W1999-01256-CCA-R3-CD, 2000 WL 205055, at **1-2 (Tenn. Crim. App. at Jackson, February 10, 2000); cf. State v. Taylor, 992 S.W.2d 941, 945 (Tenn. 1999). Indeed, Tenn. Code Ann. § 40-36-106(e)(3)(B) (1995) requires that revocation proceedings for community corrections sentences as

well as probationary sentences be conducted pursuant to Tenn. Code Ann. § 40-35-311 (1995). Thus, a trial court may revoke a defendant's community corrections sentence whenever it finds that a defendant has violated the conditions of his sentence. Harkins, 811 S.W.2d at 82 (citing Tenn. Code Ann. § 40-35-311(d)). In determining whether or not to order revocation, the trial judge need not find beyond a reasonable doubt that a violation has occurred. Rather, the existence of a violation need only be supported by a preponderance of the evidence. Id.

Having acknowledged the similarity between a probation revocation and the revocation of a community corrections sentence, we note the distinction that, in the latter case, the trial court has the authority to "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4); Taylor, 992 S.W.2d at 945. However, a person who violates his community corrections sentence has no claim to a second grant of community corrections or other form of non-incarcerative alternative sentence. State v. Henry Ford Williams, Jr., No. M2000-01495-CCA-R3-CD, 2001 WL 531005, at *2 (Tenn. Crim. App. at Nashville, May 18, 2001), perm. to appeal denied, (Tenn. 2001). Thus, on appeal, this court will only find an abuse of discretion by the trial court in requiring a defendant's service of his original sentence in confinement when the record contains no substantial evidence to support its conclusion that a violation of a condition of the community corrections sentence has occurred. Harkins, 811 S.W.2d at 82-83; cf. State v. Samuels, 44 S.W.3d 489, 492-494 (Tenn. 2001).

The appellant in this case does not deny his commission of the offenses of fraud and criminal impersonation while on bond pending the resolution of his appeal from convictions of felony drug possession. Rather, he contends that, because his felony drug possession cases were pending on appeal and his community corrections sentences had not yet commenced when he committed fraud and criminal impersonation, the trial court could not rely upon his conviction of those offenses to revoke his community corrections sentences. We disagree.

Admittedly, prior opinions by this court addressing the issue raised by the appellant have primarily done so in the context of probation revocations. For example, in State v. Stone, 880 S.W.2d 746, 747 (Tenn. Crim. App. 1994), the defendant was convicted of aggravated assault and sentenced to four years in the Department of Correction. The trial court suspended all but 330 days of the defendant's sentence, placing him on probation. Id. Subsequently, the defendant appealed his conviction and was released on bond pending the resolution of appellate proceedings. Id. While on bond, the defendant committed another aggravated assault. Id. Following the appellant's conviction of this second offense, the trial court revoked the defendant's probation in the first aggravated assault case, rejecting the defendant's argument that "he was not on probation at the time of the second offense and that because his release from confinement was only obtained by making an appeal bond, the trial court was without authority to revoke his uncommenced probation." Id. This court affirmed the trial court's judgment. Id. at 748-749. We preliminarily noted that, under Tenn. Code Ann. § 40-35-310 (1990)(emphasis added), the trial court is given the power "at any time *within the maximum time which was directed and ordered by the court for such suspension*,

after proceeding as provided in § 40-35-311, to revoke and annul such suspension." Stone, 880 S.W.2d at 748. Nevertheless, we concluded:

> [F]rom the date of the entry of a judgment which includes sentencing to both confinement and probation, a trial court has the authority to revoke probation if a defendant commits another crime after entry of the judgment, but before the probationary term begins. We note that all jurisdictions, save one, that have been confronted with criminal acts occurring after sentencing but before a probationary term has begun have held that the trial court has the authority to revoke, even if existing statutes refer to violations occurring during the probation period.

Id.

This court revisited the issue in State v. Conner, 919 S.W.2d 48, 49 (Tenn. Crim. App. 1995), in which case the defendant pled guilty to driving under the influence (hereinafter DUI), fourth offense, and driving on a revoked license (hereinafter DRL). The trial court imposed concurrent sentences of, respectively, eleven months and twenty-nine days in the county jail and six months in the jail, ordering both confinement and a term of probation. Id. The trial court further ordered that the sentences be served consecutively to another sentence the defendant had received for a prior felony conviction. Id. While on parole from the felony sentence, the defendant committed another DUI offense. Id. Accordingly, the trial court revoked the defendant's probation in the DUI, fourth offense, and DRL cases. Id. The defendant appealed the probation revocations, and this court again adopted the position of the majority of jurisdictions that a court may revoke a term of probation based on acts committed after imposition of a sentence but before the commencement of the probationary term. Id. at 50-51. In particular, this court noted that "sound public policy dictates that a defendant who has been sentenced [to probation], and is thereby on notice of any probationary terms, should not be granted free reign to violate those terms at will merely because the actual period of probation has not begun." Id. at 51; see also State v. Smith, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995).

Finally and most recently, in State v. Patricia Adkisson, Nos. M2000-01079-CCA-R3-CD & M2000-02319-CCA-R3-CD, 2001 WL 1218570, at *10 (Tenn. Crim. App. at Nashville, October 12, 2001), this court reaffirmed the principle announced in both Stone and Conner. In Adkisson, id. at **1 & 10, the trial court revoked the defendant's probation while her appeal from the underlying misdemeanor convictions was still pending and prior to the commencement of the probationary period. This court noted that the trial court did not possess jurisdiction over the case during the pendency of the appeal but further observed that, "[u]nder Tennessee Code Annotated section 40-35-311(a) and the rule in Conner, a trial court could appropriately consider a probation revocation warrant based on a criminal offense committed during appeal after completion of the appeal and return of jurisdiction to the trial court." Adkisson, Nos. M2000-01079-CCA-R3-CD & M2000-02319-CCA-R3-CD, 2001 WL 1218570, at *10; cf. State v. Williams, 52 S.W.3d 109, 119-124 (Tenn. Crim. App. 2001).

-4-

We can conceive of no reason why sound public policy should not dictate the application of the rule in Stone and Conner to the revocation of community corrections sentences. Moreover, we note that the language contained in Tenn. Code Ann. § 40-36-106(e)(4) is broader than the corresponding language in Tenn. Code Ann. § 40-35-310 (1997), simply providing that "[t]he court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant." Finally, we have previously applied the rule in Stone and Conner in the context of the revocation of a community corrections sentence. State v. Charles Martin Stoots, No. 02C01-9712-CC-00464, 1998 WL 458179, at *1 (Tenn. Crim. App. at Jackson, August 7, 1998).

That having been said, due process requires that the defendant be advised of the relevant term or condition of his probation at the time of the violation precipitating revocation. State v. Stubblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997); Smith, 909 S.W.2d at 473; Stacy Stewart v. State, No. M1999-00684-CCA-MR3-CD, 2000 WL 374756, at *2 (Tenn. Crim. App. at Nashville, April 7, 2000). Nevertheless, we also find the following principle announced by this court in Stone, 880 S.W.2d at 749, to be equally applicable in the context of community corrections revocations: Even if specific conditions of probation have not yet been placed on the defendant at the time of his commission of another offense, "an obligation not to commit a criminal violation is so inherently and patently a requirement of our citizens that it attaches to any grant of probation and . . . probationers, whether they be present or future, are put on notice, as a matter of law, that further criminal acts may result in revocation." See also Stubblefield, 953 S.W.2d at 225; Stewart, No. M1999-00684-CCA-MR3-CD, 2000 WL 374756, at *2.

Accordingly, because the appellant was clearly on notice of his sentence and the condition of his sentence that he not commit another criminal violation, the trial court had the authority to revoke community corrections in this case and did not abuse its discretion by doing so.

### III. Conclusion
For the foregoing reasons, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-5-