# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 15, 2013 Session

## STATE OF TENNESSEE v. KAREN JO WILLIAMS

**Appeal from the Criminal Court for Sumner County**
**No. 595-2011      Dee David Gay, Judge**

---

**No. M2012-02043-CCA-R3-CD - Filed June 19, 2013**

---

Appellant, Karen Jo Williams, entered guilty pleas to forgery, two counts of theft of property valued at $500 or less, and violation of an order of protection. Pursuant to the plea agreement, the trial court imposed an effective four-year sentence to be served in community corrections and ordered the sentence to be served consecutively to a probationary sentence from Kentucky that she was serving at the time. Subsequently, the trial court held a revocation hearing, after which it revoked appellant's community corrections sentence and ordered execution of her four-year sentence in the Tennessee Department of Correction. Appealing the trial court's judgment, appellant raises the following issues: (1) whether a community corrections revocation warrant alleging violation of a direct order was valid when appellant's Tennessee sentence had not yet begun; (2) whether an amended warrant alleging a new criminal conviction was invalid; and (3) whether the trial court abused its discretion in revoking her unserved community corrections sentence and ordering execution of her full sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Laura A. Frost, Hendersonville, Tennessee (at revocation hearing and on appeal), and Laura Wood, Mt. Juliet, Tennessee (at guilty plea submission hearing), for the appellant, Karen Jo Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Tara Wyllie, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Facts from the Plea Submission hearing

A Sumner County grand jury returned a four-count indictment charging appellant with forgery, forgery of $500 or less, theft of property valued at $500 or less, and violation of an order of protection. On December 12, 2011, she pleaded guilty to all counts[1] of the indictment, and the State offered the following factual basis for the pleas:

> Judge, if the Forgery were to go to trial, the State's proof would show that on or about April 1, 2011, [appellant] [wrote] check number 2538 in the amount of $80.28.
>
> Judge, this is a check that was written to . . . the City of Portland originally, and [appellant] changed Portland to be the City of Bowling Green with the amount. This is a check that [appellant] received while she was working for Cumberland Electric. . . . [I]t was a Cumberland Electric [c]heck. She took the check home and altered the check. The check was never passed, but it was forged. That would be the State's proof on Count One.
>
> If Count Two were to go to trial, the State's proof would show on May 23, 2011, [appellant] [wrote] a check, number 2600, dated May 23, 2011, in the amount of $150 made payable to herself. And it was going to be drawn by Linda Gail Hillard for the payment of money drawn upon Regions Bank. That was written without the authorization of the check owner.
>
> If Count Four[2] were to go to trial, the State's proof would show that on June 6, 2011, [appellant] [took] the amount of . . . $300 in a wallet belonging to Linda Gail [Hillard]. The victim in this [count, count two, and count five] is [appellant's] mother. . . .
>
> Judge, [appellant] took that wallet and did not have permission to have that wallet. All of the money was returned except for $24.

---

[1] Count Two of the indictment was amended from forgery of $500 or less to theft of property valued at $500 or less.

[2] The record reflects that Count Three of the indictment was "no true-billed" by the grand jury.

Judge, the State's proof would also show that on June 6, 2011, there was contact made . . . at the police department regarding this, and there was an Order of Protection that was in place. That was made without that Order of Protection having been dropped . . . .

The trial court imposed the agreed-upon sentences of two years for forgery and eleven months, twenty-nine days for each of the remaining counts. The sentences for the first three counts were to be served consecutively to each other, and the fourth sentence was to be served concurrently with the third count, resulting in an effective sentence of four years. All sentences were consecutive to a sentence appellant was serving in Kentucky.[3] The trial court ordered that the sentences be served in community corrections.

### B. Facts from the Probation Revocation Hearing

On August 6, 2012, the trial court held a hearing on a violation warrant filed by community corrections officer Jennifer Duke on March 21, 2012, and amended on May 1, 2012. The first violation alleged that appellant disobeyed Ms. Duke's direct order to report to her state probation officer, Ashley Stinson, forthwith. The amended warrant alleged that appellant was charged with evading arrest on April 11, 2012, as officers attempted to serve her with the original probation revocation warrant.

Prior to the beginning of the revocation hearing, appellant, through counsel, argued that the sentence in the instant case was a consecutive "unserved" sentence, meaning that her sentence had not yet begun because she was still serving the prior probationary sentence from Kentucky. As such, she argued, she should not have been subject to supervision by community corrections, and any disobedience of a direct order was not a violation of the terms of her community corrections sentence, per se. Counsel noted that the charge of evading arrest in Williamson County occurred as a result of the issuance of an invalid community corrections revocation warrant. However, she stated that appellant had pleaded guilty to that charge. The trial court opined, "Well, see[,] that's different. She's been convicted of a crime[,] then that kicks in this exception of an unserved sentence. That's the only thing that will allow the unserved sentence to be violated if she's been convicted . . . before this sentence even started."

The State called Jennifer Duke as its first witness. Ms. Duke testified that she was a supervising officer with community corrections. Appellant's case was assigned to her on

---

[3] Appellant testified at the plea submission hearing that her Kentucky sentence was originally a four-year sentence but that four years were "added on to it." She was still on probation in that case at the time of the plea submission hearing in the instant case.

December 12, 2011. Ms. Duke's records reflected that in April 2011, appellant garnered a new offense for evading arrest that subsequently led to a criminal conviction.

Ms. Duke also testified with regard to the first violation she filed against appellant. Appellant was obligated to report to Ashley Stinson, a state probation officer, who was supervising appellant's Kentucky probation. Because appellant resided in Williamson County, appellant would report to community corrections at their Franklin office one day per week and would report to Ms. Duke in Gallatin when she was able to do so. On March 15, 2012, appellant was in Gallatin and reported to Ms. Duke in the Sumner County office. She was not scheduled to meet with Ms. Stinson at that time, but she asked to report to Ms. Stinson, whose office was also in Gallatin, because she was already there. Ms. Duke telephoned Ms. Stinson, then instructed appellant to proceed to Ms. Stinson's office. Appellant subsequently failed to report to Ms. Stinson.

Ms. Duke acknowledged that her office was unaware that appellant's new sentence was to be served consecutively to her probationary sentence from Kentucky, so Ms. Duke instructed her to begin reporting immediately after she entered the guilty pleas in Sumner County Criminal Court. She believed that appellant violated a direct order from community corrections, so she filed the violation. As officers attempted to serve appellant with the warrant, she evaded arrest and was charged with that offense.

The State's next witness was Ashley Stinson. She was employed as a probation and parole officer with the Tennessee Department of Correction and supervised appellant's Kentucky probation. Ms. Stinson explained that appellant's four-year probationary sentence had been extended because she violated the terms of her probation by moving to Tennessee without going through the proper channels. According to Ms. Stinson's records, appellant's Kentucky sentence was due to expire on December 19, 2012.[4] Ms. Stinson confirmed that neither she nor Ms. Duke was aware that appellant's sentences in the instant case were to run consecutively to the Kentucky sentence.

Ms. Stinson stated that appellant last reported to her on February 17, 2012. On March 15, 2012, appellant was in Gallatin and reported to Ms. Duke. Appellant was scheduled to report to Ms. Stinson the following day. Appellant did not have her own transportation and had to ask for assistance in making her appointments. For that reason, appellant asked Ms. Duke if she could report to Ms. Stinson one day earlier than scheduled. Ms. Stinson agreed

_____

[4] At the revocation hearing, there was some confusion concerning whether appellant's Kentucky sentence expired in 2012 or 2013. For the purposes of this appeal, the precise date is irrelevant because by either date, appellant was still serving her Kentucky sentence, and her Tennessee sentence was still "unserved."

that appellant could report on that day, but she failed to report. Ms. Stinson stated that the next time appellant reported to her, she was going to be served with a probation violation warrant from Kentucky based on the new charges in Tennessee that formed the basis of the instant case. At some point, appellant telephoned Ms. Stinson and left her a voice mail message stating that she had been released from custody in Kentucky on bond and inquiring about what actions she should take next. Ms. Stinson did not hear from appellant again after she left the message. As of the date of the revocation hearing in this case, appellant's probation violation in Kentucky had not been resolved, and she was out of custody on bond.

Following the hearing, the State articulated that its position was that the trial court should revoke appellant's community corrections sentence because she garnered the new conviction of evading arrest. It stated further:

> [I]f the basis of [the first] warrant were being challenged today and that were the only reason we had for the probation violation and not the new charge[,] perhaps that warrant would have been properly dismissed here in this Court. . . . But, Judge, based on the fact that she responded so inappropriately[,] she fled from the police in Williamson County. She pled guilty to those charges. . . . [S]he committed a new crime[,] and she's been convicted of it.

> It was the defendant's choice to flee from the police that day and not be served with that warrant and go into custody and then challenge the fact that she was . . . not supposed to be supervised by community corrections. . . . That's the problem here. It's not the fact that the original warrant was issued.

The trial court posited, "I think the basis, General, is that she was reacting to a[n] invalid arrest warrant and had it not been for that invalidity[,] she wouldn't have got[ten] in trouble in the first place." The State responded that appellant was unaware that she had no obligation to report to community corrections, as evidenced by her actions in routinely reporting to Ms. Duke. Therefore, the invalidity of the warrant was not the reason for appellant's evading arrest. The State advanced, "She fled the police like anybody flees the police[;] she did it because she didn't want to be arrested that day[,] so she evaded arrest."

The trial court stated, "[T]he law is clear that if the defendant has violated the law based on consecutive unserved sentence[,] then that consecutive unserved sentence can be imposed. So[,] has there been a conviction of a crime? And the answer is, yes." It further opined, "[T]he warrant for that shows that she was convicted of Evading Arrest. It's clear[,] based on the testimony today[,] that [appellant] did not follow the requests of Officer Stinson[,] and she did not stay when she saw the police there to arrest her . . . in Williamson

County." The court ultimately ruled:

> I find that a crime has been committed. I find that and it's not my
> responsibility to look at the legalities of the warrants that caused . . . the
> Evading Arrest . . . . The facts are clear[;] she was told by an officer of the
> probation department to report. She didn't. She saw a police officer, and she
> left [through] the back of a restaurant, and she had to be arrested, confronted
> at that point. She has been convicted of Evading Arrest.
>
> Therefore, I do find . . . that your [community corrections] has been
> violated, and I impose the entire sentence to run consecutively to your
> Kentucky sentences as originally ordered.

It is from this judgment that appellant now appeals.

## II. Analysis

### A. Violation of Appellant's Community Corrections

Appellant frames one of her issues as "[w]hether the trial court erred in ruling that
[appellant] was subject to supervision and ultimately a violation from community corrections
even though the judgment reflected otherwise." However, while the trial court entertained
argument from counsel regarding the invalidity of the original warrant based on appellant's
not having an obligation to report, it ultimately revoked her community corrections sentence
based on her garnering the new conviction of evading arrest. Appellant posits that "[t]he
State would like to make the basis for this revocation about the evading arrest." The trial
court noted at the outset of the hearing that a new conviction was "the only thing that will
allow the unserved sentence to be violated if she's been convicted . . . before this sentence
even started."

### 1. Standard of Review

The procedures for revocation of probation and community corrections are similar.
*State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. Crim. App. 1996). The appellate standard of
review of both revocation of community corrections and probation is abuse of discretion.
*See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Kendrick*, 178 S.W.3d 734,
738 (Tenn. Crim. App. 2005) (citing *Harkins*, 811 S.W.2d at 82); *see also State v. Reams*,
265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its
discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its
ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an

injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). In determining whether to revoke a community corrections sentence, it is not necessary that the trial judge find that a violation of the terms of supervision has occurred beyond a reasonable doubt. *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of a community corrections sentence, the court may revoke the sentence, and it "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed . . . ." Tenn. Code Ann. § 40-36-106(e)(3), (4) (2010 & Supp. 2012).

### 2. Validity of Initial Warrant and Amended Warrant

Appellant argues that because she was under no legal obligation to report to community corrections, the initial violation warrant based on her failure to follow a direct order was invalid. She further contends that because the initial warrant was invalid, any amendment thereto must also be invalid.

Although appellant began reporting to community corrections as instructed by Ms. Duke, the judgment forms indicate that her Tennessee sentences were to be served consecutively to her Kentucky sentence, and therefore, her sentences here had not yet begun. Accordingly, appellant was not legally obligated to report to community corrections, and Ms. Duke had no lawful authority to issue a direct order to appellant at that time. As such, the revocation warrant was improperly issued. Thus, our inquiry focuses on the legal implication of a community corrections revocation warrant that was subject to dismissal.

In an analogous case, this court has considered the alleged invalidity of a probation revocation warrant as a defense to the crime of escape. In *State v. Marty Miller*, No. 03C01-9602-CC-00056, 1997 WL 90638 (Tenn. Crim. App. Mar. 4, 1997), appellant committed the offense of escape while he was at the courthouse awaiting a hearing on his probation revocation warrant. On appeal, he argued that he could not be guilty of felony escape because the warrant that resulted in his being in custody in the first place was invalid. *Id.* at *1-2. Rejecting appellant Miller's argument, this court wrote:

> The validity of a warrant or an arrest should not be considered a defense to a charge for escape. Once a defendant is held in custody of any type by anyone vested with the lawful authority to do so, escape is not a lawful option. The proper forum to assert defenses of any kind is before the trial court. Here, the Defendant could always have presented the defense that the issuance of the warrant exceeded the statute of limitation. Yet, he chose to escape while

waiting at the courthouse for a hearing before the trial judge. If the validity of the probation violation warrant was indeed a valid defense, the trial court could have remedied the situation by dismissing the warrant.

*Id.* at *3 (footnote omitted).

Likewise, in this case, we conclude that the invalidity of an initial revocation warrant cannot be considered as a defense to the amended warrant based on evading arrest. The proper forum to assert defenses, such as the invalidity of the warrant, is before the trial court. The trial court in this case could have dismissed the initial warrant upon ascertaining its invalidity, but appellant chose to flee from law enforcement officers as they attempted to serve the warrant, forming the basis for the amended violation warrant that included the new charge of evading arrest.[5] We decline to invalidate the amended warrant based on the invalidity of the original warrant. The State could have easily obtained a new warrant that included the criminal offense, which would have been supported by the facts of this case. We will not draw such a distinction with no practical difference. As such, we conclude that although the original community corrections violation warrant was subject to dismissal, the amended warrant based on appellant's new conviction for evading arrest was valid. The trial court did not err in revoking appellant's community corrections sentence based on a new criminal conviction.

### 3. Revocation of Unserved Sentence

On December 12, 2011, appellant was ordered to serve her sentence in the instant case in community corrections, with supervision to begin at the conclusion of her Kentucky sentence. Although her Kentucky sentence had not yet expired, "[i]t is of no consequence that revocation occurred prior to the commencement of the probationary term. Any other conclusion would allow a defendant to commit indiscriminate criminal acts between the grant of probation and the commencement of the probationary term without consequence." *State v. Israel Allen Jackson*, No. M2005-00365-CCA-R3-CD, 2005 WL 3038613, at *2 (Tenn. Crim. App. Nov. 9, 2005). *See also State v. Conner*, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995) (concluding that a court may revoke a probationary sentence based upon acts committed after the sentence was imposed but before the probationary term began); *State v. Stone*, 880 S.W.2d 746, 748 (Tenn. Crim. App. 1994) (noting that "from the date of the entry of a judgment . . . , a trial court has the authority to revoke probation if a defendant commits

---

[5] Appellant correctly notes that an unlawful attempted arrest is a statutory defense to evading arrest. Tenn. Code Ann. § 39-16-603(a)(2) (2010). However, counsel in the evading arrest case did not raise the defense or present proof in support of it. Rather, appellant pleaded guilty to the charge. As such, the trial court in the instant case properly revoked appellant's probation based on her obtaining a new conviction.

another crime after entry of the judgment[ ] but before the probationary term begins"). The trial court did not abuse its discretion in revoking appellant's Tennessee community corrections sentence before she began to serve it.

## B. Disposition of Appellant's Sentence

Having concluded that the trial court's revocation of appellant's community corrections sentence was a proper exercise of discretion, we must now consider the trial court's disposition of the matter. Because of the similarity between revocations of probation and community corrections sentences, we conclude that as in probation revocation cases, "[t]he determination of the proper consequence of the . . . violation embodies a separate exercise of discretion." *State v. Darius J. Hunt*, No. E2011-01238-CCA-R3-CD, 2012 WL 952265, at *2 (Tenn. Crim. App. Mar. 20, 2012) (citing *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)).

In her brief, appellant stated that she had subpoenaed a witness to testify at the revocation hearing. During oral arguments before this court, counsel stated that the witness would have testified as to appellant's success in community corrections. Counsel argued that the trial court failed to consider this mitigating evidence in ordering execution of appellant's full sentence. The State conceded that the trial court should have heard the witness's testimony.

This court, however, is not bound by a party's concession. *See Barron v. State Dep't of Human Servs.*, 184 S.W.3d 219, 223 (Tenn. 2006); *State v. Gomez*, 163 S.W.3d 632, 661-62 (Tenn. 2005), *vacated on other grounds*, 549 U.S. 1190 (2007); *State v. Mitchell*, 137 S.W.3d 630, 639-40 (Tenn. Crim. App. 2003). Rather, on appeal, we may independently analyze the conceded issue. *State v. Franklin*, 308 S.W.3d 799, 811 (Tenn. 2010).

The United States Supreme Court has set forth the minimum requirements of due process in probation revocation hearings as follows:

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

*Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)); *State v. Merriweather*, 34 S.W.3d 881, 884 n.5 (Tenn. Crim. App. 2000). Clearly, appellant had the right to present witnesses on her own behalf. However, we ascertain from our review of the record that after the State presented its witnesses, the trial court addressed appellant's counsel, "[Y[ou may put on any proof." Instead of presenting the witness, counsel renewed her motion to dismiss. The trial court heard extensive argument from counsel for both parties. Following counsel's arguments, the court again asked, "Anything else?" Counsel responded, "Nothing, Your Honor." The trial court then rendered its decision.

At no point did counsel for appellant make known to the trial court that she had a witness subpoenaed or that she wanted to present the witness's testimony. Appellant's counsel did not request to make an offer of proof in the trial court. While an accused has a constitutional right to present witnesses at a revocation hearing, counsel also has an obligation to preserve the issue in the trial court. For this reason, we conclude that appellant has waived the issue for appellate review.

## CONCLUSION

Based on the entire record, the parties' briefs, arguments of counsel, and applicable case law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE